# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51268-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ABDOUL H. KAFANDO, | |
| Appellant. | |

GLASGOW, J. — Abdoul Kafando was convicted of second degree assault for stabbing his brother-in-law, Alto Powell, in the abdomen. Kafando appeals from his conviction, contending that the State failed to present sufficient evidence that he did not act in self-defense when stabbing Powell, the trial court misstated the law in response to a jury question, and his defense counsel was ineffective for agreeing to the trial court's answer in response to the jury question.

Kafando also appeals from his sentence, asserting that we should remand for the trial court to strike a criminal filing fee and an interest accrual provision in his judgment and sentence in light of recent statutory amendments to the legal financial obligation statutes.

We affirm Kafando's conviction but remand solely for the trial court to strike the criminal filing fee and to correct the interest accrual provision in his judgment and sentence.

FACTS

Kafando and his wife, Yasha Bolton, were involved in a dispute at their apartment. Bolton's three teenage daughters and two of Bolton's friends were at the home during the dispute. After Kafando began yelling at one of Bolton's friends, Bolton led Kafando to their bedroom to try to diffuse the situation. While in the bedroom, Bolton put her hand on Kafando's chest. Kafando grabbed Bolton's hand, pulled it behind her back, and repeatedly pushed her against a wall. Bolton's daughters tried to enter the bedroom while yelling at Kafando to get his hands off of their mom. Kafando eventually left the bedroom and stormed out of the apartment.

Bolton's brother, Powell, came to Bolton's apartment the next day. While Bolton was telling Powell about what transpired the previous day, Kafando knocked on the door. Powell opened the door and confronted Kafando. Powell asked Kafando if he put his hands on his sister and said, "[p]ut your hands on me like you did my sister." Report of Proceedings (RP) at 301. Kafando and Powell began to fight. Powell stated that during the fight, he punched Kafando in the face and wrestled him to the ground.

The next day, Bolton obtained a temporary protection order prohibiting Kafando from contacting her or coming to the apartment. Bolton decided that she wanted to end her relationship with Kafando and removed his name from their joint accounts. She did not notify Kafando of the protection order.

The following day, Kafando communicated with Bolton by text message. Kafando was upset that Bolton removed his name from their joint accounts and told her that he was coming to the apartment. Bolton was at work, and she told Kafando not to come to the apartment until she was at home later that week. Kafando insisted.

Soon after, Bolton's daughters called Bolton at work and told her that Kafando was at the apartment building. Bolton called the police out of concern for her daughters' safety. Bolton also called Powell and asked him to go to the apartment to serve Kafando with the protection order.

Powell drove to the apartment with his girlfriend, Alexa Rodriguez, and saw Kafando moving boxes to his car. As Powell approached Kafando with the protection order, Rodriguez sat in the car and video recorded the interaction with her cell phone. The video was played for the jury at trial.

As Powell approached Kafando, he said, "I'm over the other day. I'm not trying to fight with you. I just want you to get your stuff and leave. You're scaring my nieces." RP at 275. Powell handed Kafando the protection order, and Kafando became angry and started cursing at Powell. As Powell walked back to his car, Kafando started calling him names and said that he would beat him up. Powell walked back toward Kafando and asked him what he was talking about. Kafando then lunged at Powell and stabbed him in the abdomen with a knife.

Powell stumbled backwards and grabbed his abdomen. Kafando told Powell that he would kill him. Powell got in the car, and as Rodriguez began driving away, Kafando jabbed the knife in the open driver's side window.

Rodriguez drove Powell to the hospital. A surgeon treated Powell's stab wound and closed it with staples; the injury did not cause damage to any of Powell's vital organs.

Tacoma Police Officer Thomas Perry went to the apartment complex to serve Kafando with the protection order shortly after Bolton called police. As Perry approached the area,

3

Kafando flagged him down. Kafando told Perry that he was being followed. Another vehicle arrived shortly thereafter, and one of the occupants told Perry that Kafando had stabbed Powell.

Kafando told Perry that Powell had handed him a protection order and told him to leave the area. Kafando said that Powell ran at him and threatened to beat him up as he was packing his belongings. Kafando said that he stabbed Powell in the stomach because he feared that Powell would beat him up.

The State charged Kafando by amended information with first degree assault and, in the alternative, second degree assault. The matter proceeded to a jury trial where witnesses testified to the facts as stated above.

The trial court provided a self-defense jury instruction that stated:

Instruction No. 17

It is a defense to a charge of Assault that the force used was lawful as defined in this instruction.

The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he or she is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

Clerk's Papers (CP) at 78.

During its deliberations, the jury submitted a question asking, "[d]o we have to be 100% in agreement to say that it was or was not self defense (i.e. Instruction 17)?" CP at 88. After discussing the jury's question with the parties, the parties and the trial court agreed to answer the question, "yes." RP at 433-37; CP at 88.

The jury returned verdicts finding Kafando not guilty of first degree assault and guilty of second degree assault. The jury also returned special verdicts finding that Kafando and Powell were members of the same family or household and that Kafando was armed with a deadly weapon during his commission of second degree assault.

At sentencing, the trial court imposed legal financial obligations, including a then-mandatory $200 criminal filing fee. Kafando's judgment and sentence includes a provision stating that "[t]he financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full." CP at 189. Kafando appeals from his second degree assault conviction and sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Kafando contends that the State failed to present sufficient evidence to support his second degree assault conviction. Specifically, Kafando asserts that the State failed to present sufficient evidence to prove that he did not act in self-defense when stabbing Powell. We disagree.

Evidence is sufficient to support a conviction if it permits any reasonable trier of fact to find the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the State. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). When evaluating sufficiency of the evidence, we assume the State's evidence is true and adopt

reasonable inferences that a trier of fact could draw from that evidence. *Id*. Circumstantial evidence is no less reliable than direct evidence in this context. *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015). We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

A person acts in self-defense when they reasonably believe they are about to be injured and use no more force than necessary "to prevent an offense against [their] person." RCW 9A.16.020(3); *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). A jury evaluates evidence of self-defense both subjectively and objectively. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997). The subjective portion requires the jury to consider the apparent threat from the defendant's point of view. *Walden*, 131 Wn.2d at 474. The objective portion requires the jury to consider what a reasonably prudent person would have done in the defendant's situation. *Walden*, 131 Wn.2d at 474. "Accordingly, the degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." *Walden*, 131 Wn.2d at 474.

Where, as here, a defendant offers some evidence tending to demonstrate self-defense, the State has the burden to prove beyond a reasonable doubt the absence of self-defense. *State v. Jordan*, 180 Wn.2d 456, 465, 325 P.3d 181 (2014). We hold that the State presented sufficient evidence to meet its burden.

Powell testified that he approached Kafando carrying only the protection order. Powell told Kafando that he was over their previous fight and did not want to fight with him again. Powell handed Kafando the protection order and began walking back toward his vehicle.

Kafando became angry, started cursing, and told Powell that he would beat him up. When Powell turned and asked Kafando what he had said, Kafando lunged at him with a knife and stabbed him in the abdomen. A video of the incident shows Powell standing in a carport with his hands at his sides immediately before Kafando lunged and stabbed him.

Viewing this evidence in a light most favorable to the State, a jury could find that a reasonably prudent person in Kafando's situation would not have perceived Powell as posing an imminent threat of injury. Alternatively, a jury could find from this same evidence that stabbing Powell in the abdomen was more force than was necessary to prevent any imminent injury that Kafando may have anticipated. Accordingly, we hold that the State presented sufficient evidence to prove Kafando did not act in self-defense when he stabbed Powell.

## II. RESPONSE TO JURY QUESTION

Next, Kafando contends that the trial court misstated the law when it answered "yes" to the deliberating jury's question: "Do we have to be 100% in agreement to say that it was or was not self defense (i.e. Instruction 17)?" CP at 88. In the alternative, Kafando contends that his defense counsel was ineffective for agreeing that "yes" was the appropriate answer to the jury question. On both contentions, we disagree.

A.     Misstatement of Law

"Jury instructions are sufficient if they are supported by substantial evidence, [they] allow the parties to argue their theories of the case, and when read as a whole [they] properly inform the jury of the applicable law." *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). A trial court has discretion to provide further instruction to the jury after it has begun its deliberations. *State v. Sublett*, 156 Wn. App. 160, 183, 231 P.3d 231 (2010), *aff'd*, 176 Wn.2d

7

58 (2012). But where, as here, a defendant claims the trial court misstated the law in response to a deliberating jury's question, we review the trial court's response de novo, "in the context of the instructions as a whole." *Id.* (internal quotations omitted). Self-defense instructions, read as a whole, must make the relevant legal standard manifestly apparent to the average juror. *State v. Sullivan*, 196 Wn. App. 277, 291-92, 383 P.3d 574 (2016).

Kafando argues that the trial court's response to the jury's question misstated the law because it suggested that he had the burden to prove self-defense. We disagree.

As an initial matter, the State asserts that the invited error doctrine prevents Kafando from raising this claim on appeal because he agreed to the trial court's response to the jury's question. Because we conclude that the trial court's response to the jury question did not misstate the law, we do not address whether Kafando's agreement to the response constituted invited error.

Here, the jury question asking whether it had to be 100 percent in agreement as to whether Kafando did or did not act in self-defense explicitly referenced instruction 17. That instruction clearly and unambiguously provided that the State had the burden of proving the absence of self-defense beyond a reasonable doubt. The instruction also stated that the jury was required to find Kafando not guilty of the assault charges if it determined that the State did not meet this burden. The jury's question did not express any confusion with regard to this clear and unambiguous directive regarding the State's burden. Rather, the jury question merely requested clarification as to whether it had to be unanimous in finding whether the State had or had not met its burden of proving the absence of self-defense beyond a reasonable doubt.

The trial court's answer "yes" to the question of whether the jury had to be unanimous in its finding on self-defense, an essential element of the charged crime, was a correct statement of law. *See, e.g.*, *State v. Strange*, 188 Wn. App. 679, 691, 354 P.3d 917 (2015) ("Under the Washington and United States Constitutions, a criminal defendant is entitled to a unanimous jury verdict rendered by an impartial jury."). Accordingly, we hold that the trial court did not misstate the law when responding to the jury question.

B.      Ineffective Assistance of Counsel

Next, Kafando contends in the alternative that his defense counsel was ineffective for failing to object to the trial court's response to the jury question. We disagree.

To demonstrate ineffective assistance of counsel, Kafando must show both that defense counsel performed deficiently and that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Because the trial court did not misstate the law in response to the jury question for the reasons explained above, Kafando cannot make either showing. Accordingly, his ineffective assistance of counsel claim fails, and we affirm his conviction of second degree assault.

III. LEGAL FINANCIAL OBLIGATIONS

Finally, Kafando challenges the imposition of a $200 criminal filing fee in light of recent amendments to the legal financial obligation statutes. He also challenges the inclusion of language on his judgment and sentence stating, "[t]he financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full." CP at 189. The State concedes that Kafando is indigent and that remand is required for the trial court to

9

No. 51268-8-II

strike the criminal filing fee and to eliminate language stating that interest will accrue on Kafando's nonrestitution legal financial obligations. We accept the State's concession.

RCW 36.18.020(h) now prohibits trial courts from imposing criminal filing fees on indigent defendants, and RCW 10.82.090(1) prohibits interest from accruing on nonrestitution legal financial obligations. LAWS OF 2018, ch. 269. These statutes apply prospectively to cases that are on appeal. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

We remand to the trial court to strike the criminal filing fee and to correct Kafando's judgment and sentence to eliminate language stating that interest will accrue on nonrestitution legal financial obligations.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, P.J.

Cruser, J.

10