# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION III

|  |  |
|---|---|
| STATE OF WASHINGTON, | No. 36008-3-III |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DANIEL JOSEPH WEST, | |
| Appellant. | |

MAXA, C.J. – Daniel West appeals his convictions of first degree child rape of his daughter and two counts of second degree child rape of his girlfriend's daughter, as well as certain provisions regarding legal financial obligations (LFOs).

We hold that (1) the invited error doctrine precludes West's challenge to the trial court's failure to give a unanimity instruction because West's proposed set of jury instructions did not include a unanimity instruction; (2) as the State concedes, the word "romantic" should be removed from the community custody condition requiring prior approval of West's "romantic/sexual" relationships because that term is unconstitutionally vague; (3) as the State concedes, the criminal filing fee imposed as an LFO must be stricken from the judgment and sentence; (4) the provision imposing interest on nonrestitution LFOs must be stricken from the judgment and sentence; and (5) West's claims in a statement of additional grounds (SAG) that comments by jurors in the jury assembly room should have resulted in a mistrial and that there

was an appearance of fairness violation when the trial court chastised defense counsel for the nature of his voir dire questions have no merit.

Accordingly, we affirm West's convictions, but we remand for the trial court to strike the word "romantic" from the challenged community custody condition and to strike the criminal filing fee and the provision imposing interest on nonrestitution LFOs from the judgment and sentence.

FACTS

*Background*

West and Rachel Smith were in a romantic relationship. Both had children from prior relationships. West's daughter RW and Smith's daughter KM were five months apart in age and developed a close, sisterly relationship.

West and Smith moved with their children into an apartment in the Spokane Valley when RW and KM were around eight or nine years old. In 2008, the couple and their children moved again to a house in Spokane. West often watched the children because Smith was frequently away during the evenings, attending school and work.

In February 2014, RW reported to law enforcement that West was sexually abusing her. KM also eventually disclosed that West had been abusing her.

The State charged West with two counts of first degree child rape regarding RW and two counts of second degree child rape regarding KM. The State alleged in the first degree rape counts that West had raped RW between May 2006 and May 2009, when she was less than 12 years old. The State alleged in the second degree rape counts that West had raped KM between October 2011 and October 2012 when she was 12 years old and again between October 2012 and October 2013 when she was 13 years old.

*Jury Selection*

During voir dire, juror 9 reported to the trial court that in the jury assembly room juror 58 said, "I'm a corrections officer. I can see these guys a mile away. I babysit these guys and I can tell you, I will be babysitting this guy." 2 Report of Proceedings (RP) at 354. The trial court questioned juror 58, who recalled making a statement to juror 9 that because of his work in corrections he was able to identify sex offenders and likely would end up supervising the defendant.

Juror 58 also stated that during a recess he overheard a female juror say that "she would have a hard time because she's a mother of children." 2 RP at 372. He could not identify which juror had said this.

The trial court then questioned juror 9, and he repeated what juror 58 had told him. Juror 9 stated that other jurors could have overheard their conversation; specifically, a woman reading a book nearby. Juror 9 did not know if the woman had overheard them, as she did not react to their words or join their conversation. He stated that no one else in the room joined in their conversation or had any visible reaction to juror 58's comments.

The court later questioned the entire panel, asking them to raise their hand if they could answer yes to any of the following questions: (1) "Has anyone expressed an opinion about this case to any of you?" (2) "Has anyone received any information about this case other than what you've heard here in this courtroom?" (3) "[D]oes anyone feel that they cannot be fair and impartial should you be chosen to sit on this jury?" and (4) "[D]oes anyone feel they cannot follow my instructions throughout this trial?" 3 RP at 423. No jurors raised their hands.

Finally, the trial court asked, "Has anyone, has any fellow juror, in other words, somebody else that's in the jury pool, expressed an opinion to any of you about this case?" 3 RP at 426. Only juror 9 raised his hand.

The trial court dismissed juror 58 from the jury panel for cause. The State later used a preemptory challenge to remove juror 9 from the panel.

West moved for a mistrial based on the comments made by juror 58 and the unidentified juror who stated that she would have a hard time because she was a mother of children. West argued that the entire jury panel should be stricken and the trial started over. The trial court denied the motion.

Also during jury selection, the trial court during a sidebar conference chastised defense counsel for the nature of his voir dire questions. According to defense counsel,

> About halfway through the voir dire for the defense, the court called the parties to the bench. The court seemed irritated and admonished counsel that counsel was getting dangerously close to violating the court's early warning concerning voir dire. The court accused defense counsel of usurping the court's rule and instructing the jury on the law and accused defense counsel of giving the jurors a civic [sic] lesson.

5 RP at 846. Based on these comments, West moved for a mistrial under the appearance of fairness doctrine. The trial court denied the motion.

*Trial*

RW testified that West first raped her when she was about 7 years old. She described in detail the first time she was raped. RW estimated that West anally raped her at least 10 times over a long period of time. She stated that West eventually stopped raping her after the family moved into the house in Spokane.

4

KM testified West began sexually abusing her when she was 12 years old. She stated that West anally raped her for a period of two years. KM estimated that during this period the rapes occurred about three times per week and up to five separate times per day.

Following the presentation of evidence, both the State and West submitted proposed jury instructions. West submitted a complete set of instructions plus verdict forms. Neither party proposed a unanimity instruction. The trial court discussed jury instructions with counsel. Defense counsel did not orally request a unanimity instruction or express concern about the absence of a unanimity instruction.

The trial court decided on a set of instructions that would be given to the jury. The court's instructions were nearly identical to the instructions that West proposed. No unanimity instruction was included in the jury instructions. West did not object to the failure to give a unanimity instruction.

The jury convicted West on one first degree child rape count regarding RW but acquitted him on the other first degree child rape count. The jury convicted West of both second degree child rape counts regarding KM.

*Sentencing*

At sentencing, the trial court imposed a community custody condition requiring that West "not enter into a romantic/sexual relationship" without the prior approval of his community corrections officer (CCO) and his therapist. Clerk's Papers at 202.

The court imposed mandatory LFOs, including a $200 criminal filing fee. The judgment and sentence included a provision that the LFOs would bear interest from the date of the judgment until they were paid in full. The court found West indigent for purposes of appeal.

West appeals his convictions and the imposition of the criminal filing fee and interest on LFOs.

ANALYSIS

A.    UNANIMITY INSTRUCTION

West argues that his convictions violate his constitutional right to a unanimous jury verdict because there were multiple acts that could have supported them, but the jury was not given a unanimity instruction and the State did not elect which act supported which rape charge. We decline to consider the issue because West invited the error by proposing a set of jury instructions that did not include a unanimity instruction.

1.    Legal Principles

Under article I, section 21 of the Washington Constitution, criminal defendants have a right to a unanimous jury verdict. *State v. Rodriquez*, 187 Wn. App. 922, 936, 352 P.3d 200 (2015); *see generally State v. Petrich*, 101 Wn.2d 566, 569-70, 683 P.2d 173, *abrogated by State v. Kitchen*, 110 Wn. 2d 403, 405-06, 756 P.2d 105 (1988).  Generally, in cases where there is evidence of multiple acts that could support the crime charged, either the State must elect which act the jury should consider in its deliberations or the trial court must instruct the jury to unanimously agree on a specific criminal act. *Rodriquez*, 187 Wn. App. at 936.  The failure to do either can be constitutional error if it is possible that some jurors relied on one act and some on another act, rendering that verdict not unanimous. *Id.*

However, election by the State or a unanimity instruction is required "only when the State presents evidence of several distinct criminal acts." *State v. McNearney*, 193 Wn. App. 136, 141, 373 P.3d 265 (2016).  Neither election nor a unanimity instruction is needed if the

defendant engages in multiple acts that form a single continuing course of criminal conduct. *Rodriquez*, 187 Wn. App. at 936.

    2.    Invited Error

Without conceding that a unanimity instruction was required here, the State argues that West invited any error regarding the lack of a unanimity instruction because he did not request a unanimity instruction and did not object to the absence of a unanimity instruction. We agree.

The invited error doctrine precludes a defendant from setting up an error at trial and then challenging that error on appeal. *In re Pers. Restraint of Coggin,* 182 Wn.2d 115, 119, 340 P.3d 810 (2014). This doctrine bars a defendant's challenge even when the alleged error involves constitutional rights. *State v. Mullen*, 186 Wn. App. 321, 326, 345 P.3d 26 (2015). A defendant invites an error if he or she affirmatively assented to the error, materially contributed to it, or benefitted from it. *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009).

The invited error doctrine clearly applies when a defendant proposes an instruction and then on appeal attempts to challenge the giving of that instruction. *Coggin*, 182 Wn.2d at 119. This rule also applies when the challenged error is the *failure* to give an instruction and the defendant submits a complete set of proposed jury instructions that do not include that instruction. In this situation, the defendant has "materially contributed" to the error by not including the instruction in his or her proposed instructions and not objecting to the absence of a unanimity instruction.

Here, West invited the error he now raises because the jury instructions he proposed did not include a unanimity instruction and he did not object to the absence of a unanimity instruction. Through these actions, West essentially represented to the trial court that the set of instructions he proposed was a proper statement of the law. Therefore, we hold that the invited

error doctrine prohibits West from challenging on appeal the trial court's failure to give a unanimity instruction.

B.      SAG CLAIMS

In his SAG, West asserts that (1) his right to a fair trial by an impartial jury was violated because a prospective juror's comments about sex offenders tainted the jury panel and an unidentified juror expressed concern about the case because she was a mother, and (2) the trial court violated the appearance of fairness doctrine by chastising defense counsel during voir dire. We disagree.

1.      Prospective Juror's Comments about Sex Offenders

West appears to assert that his right to a fair trial by an impartial jury was violated because juror 58 said in the jury assembly room during jury selection that he had worked with sex offenders and implied that West looked like a sex offender. We disagree.

Article I, section 22, of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a right to a fair trial with an impartial jury. *State v. Strange*, 188 Wn. App. 679, 685, 354 P.3d 917 (2015). Comments of a potential juror during voir dire can taint an entire jury panel under specific circumstances. *See Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997) (discussed in *Strange*, 188 Wn. App. at 685-87). When determining whether a potential juror's statements taint the venire panel and thus violate a defendant's right to an impartial jury, courts have considered a number of factors, including the expertise of the potential juror in relation to the statement, the number of statements or the amount of times a statement is repeated, the certainty of the statement, and the nature or relation of the statement to the crimes charged. *Mach*, 137 F.3d at 633; *Strange*, 188 Wn. App. at 684-87.

However, here there was no evidence that any juror other than juror 9 (who did not sit on the jury) heard juror 58's comments. West argues that an unknown female juror heard the conversation between juror 58 and juror 9 and could have been on the panel because she was never identified. But juror 9 stated that this juror gave no indication that she heard juror 58's comments. The trial court attempted to find this unknown juror through individual voir dire, but was unable to determine her identity or whether or not she actually heard juror 58's statements.

Further, the trial court performed additional individual voir dire and crafted general questions for all the potential jurors. When the court asked the jurors whether they had heard opinions expressed about the case, only Juror 9 raised his hand. When the court asked jurors to indicate if they would have trouble remaining fair and impartial, no jurors raised their hands.

West's allegation that the jury panel was tainted by juror 58's comments is based only on speculation. We hold that West's right to a fair trial by an impartial jury was not violated.

2.    Prospective Juror's Comment about Being a Mother

West references the comment from an unidentified juror that the case would be hard for her because she was the mother of children. He apparently asserts this juror should have been identified and removed from the jury. We disagree.

To uphold a defendant's constitutional right to a trial by an impartial jury, a trial court will excuse a juror for cause if the juror's views would "preclude or substantially hinder the juror in the performance of his or her duties in accordance with the trial court's instructions and the jurors' oath." *State v. Lawler,* 194 Wn. App. 275, 281, 374 P. 3d 278 (2016). A juror can be challenged for actual bias, which is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party

9

challenging." RCW 4.44.170(2). Actual bias must be established by proof. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 808-09, 425 P.3d 807 (2018). The trial court is in the best position to consider the dismissal of a juror. *Id.* at 806-07. Therefore, a trial court's failure to remove a juror for cause is reviewed for abuse of discretion. *Lawler,* 194 Wn. App. at 282.

West has failed to show that the unidentified juror was biased. He claims that the juror stated that she did not think she could be fair. In fact, the juror stated only that "she would have a hard time because she's a mother of children." 2 RP at 372. This statement is equivocal and does not demonstrate actual bias. Further, when the trial court later asked all the jurors if they were able to remain fair and impartial during the trial, they all agreed they could.[1] Based on the statements of this unidentified juror and the trial court's confirmation of the impartial jury, there is insufficient evidence to demonstrate "actual bias."

The record does not show that the unidentified jury was biased or should have been removed from the jury pool. Therefore, we hold that West's right to a fair trial by an impartial jury was not violated.

3.   Appearance of Fairness

West argues that the judge violated the appearance of fairness doctrine by chastising defense counsel at a sidebar conversation during voir dire. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee that criminal defendants will be tried by an impartial court. *State v. Solis-Diaz*, 187 Wn.2d 535, 539-40, 387 P.3d 703 (2017). "Pursuant to the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer

---

[1] In addition, these comments were made by an unidentified juror in the jury assembly room during recess of voir dire. There is no evidence that the juror who made this statement actually served on the jury panel.

would conclude that the parties received a fair, impartial, and neutral hearing." *Id.* at 540. Under this doctrine, a presiding judge must actually be impartial and also appear to be impartial. *Id.* The question is "whether the judge's impartiality might reasonably be questioned." *Id.* The party asserting a violation has the burden of showing evidence of a judge's actual or potential bias. *Id.*

West appears to refer to the judge's comments at a sidebar conference during voir dire, admonishing defense counsel for asking potential jurors questions that came close to indoctrinating the jury on the defense's theory of the case. The judge apologized if this admonition was too stern, but concluded that the trial court had done everything possible to give West a fair trial and declined to declare a mistrial on that basis.

West does not explain how the judge's comment during the ruling on the motion for mistrial violated the appearance of fairness doctrine. There is no indication that the judge's comments affected his decision making or reflected any bias or animosity toward West personally. There could be no reasonable question of the judge's impartiality on this basis. Therefore, we hold that the judge's comments did not violate the appearance of fairness doctrine.

C.     COMMUNITY CUSTODY CONDITION

West argues, and the State concedes, that the word "romantic" should be stricken from the community custody condition requiring West to obtain his CCO's and his therapist's prior approval before entering a "romantic/sexual relationship." We agree.

Challenges to community custody conditions may be raised for the first time on appeal. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). Community custody conditions that are vague are unconstitutional under the Fourteenth Amendment of the United States Constitution and article I, section 3 of the Washington Constitution. *See State v. Nguyen*, 191

Wn.2d 671, 678-79, 425 P.3d 847 (2018). The court reviews community custody conditions for an abuse of discretion. *Id.* at 678.

A community custody condition is unconstitutionally vague if it (1) does not sufficiently define prohibited conduct so an ordinary person can understand, or (2) it does not provide sufficient standards to protect against arbitrary enforcement. *Padilla*, 190 Wn.2d at 677. We do not presume the validity of sentencing conditions. *State v. Johnson*, 4 Wn. App. 2d 352, 364, 421 P.3d 969, *review denied*, 192 Wn.2d 1003 (2018).

The Supreme Court has held that community custody conditions requiring approval from a defendant's CCO for a "dating relationship" are not unconstitutionally vague. *Nguyen*, 191 Wn.2d at 683. However, the court in *Nguyen* contrasted the phrase "significant romantic relationship," citing to a federal appeals court's determination that the phrase was unconstitutionally vague. *U.S. v. Reeves,* 591 F.3d 77, 79 (2d Cir. 2010). The court in *Nguyen* noted that the term "romantic" was a "highly subjective qualifier[]." *Nguyen*, 191 Wn. 2d at 683.

*Nguyen* supports the conclusion that the term "romantic relationship" is unconstitutionally vague. The fact that the term "romantic" is a "highly subjective qualifier[]," *id.*, demonstrates that the term is vague. And the court in *Nguyen* quoted with approval the statement in *Reeves* that "[w]hat makes a relationship 'romantic' . . . can be the subject of endless debate that varies across generations, regions, and genders." *Id.* at 682 (quoting *Reeves*, 591 F.3d at 81).

We hold that the term "romantic relationship" is unconstitutionally vague and therefore that the term "romantic" must be stricken from the challenged community custody condition.

D.      IMPOSITION OF LFOS

West argues that we must strike the criminal filing fee and the provision imposing interest on nonrestitution LFOs from his judgment and sentence. The State concedes that the criminal filing fee should be stricken, but does not address the interest provision. We agree with West.

In 2018, the legislature amended (1) RCW 36.18.020(2)(h), which now prohibits imposition of the criminal filing fee on an defendant who is indigent as defined in RCW 10.101.010(3)(a)-(c); and (2) RCW 10.82.090(1), which now provides that no interest shall accrue on nonrestitution legal financial obligations after June 7, 2018 and that all accrued interest before that date shall be waived. These amendments apply prospectively to cases pending on direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018).

At West's sentencing, the trial court found West indigent for purposes of appeal. The record is unclear if the trial court found West indigent based on the definitions in RCW 10.101.010(3)(a)-(c), but the State does not oppose striking the criminal filing fee. Therefore, we order the trial court to strike the criminal filing fee.

Regarding the interest provision, RCW 10.82.090(1) expressly provides that all accrued interest on nonrestitution LFOs must be waived and that interest no longer shall accrue on those LFOs. Here, the court did not order restitution and imposed only nonrestitution LFOs. Therefore, we order the trial court to strike the provision imposing interest on the LFOs.

CONCLUSION

We affirm West's convictions of first degree child rape and two counts of second degree child rape, but we remand for the trial court to strike the word "romantic" from the community

13

No. 36008-3-III

custody condition and to strike the $200 criminal filing fee and the provision imposing interest on LFOs from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Maxa, J.[2]

MAXA, J.[2]

We concur:

Korsmo, J.

KORSMO, J.

Pennell, J.

PENNELL, J.

---

[2] The Honorable Bradley Maxa is a judge on the Court of Appeals, Division Two, sitting in Division Three under CAR 21(a).