

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35513-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| N.B.,[†] | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — N.B. appeals from a juvenile court adjudication for first degree child molestation, arguing that the trial judge's comments concerning the victim amounted to improper evidence against him that he could not confront. The court's reasoning for finding the victim credible was not the equivalent of providing evidence against a defendant. We affirm the disposition.

FACTS

N.B., age 15 at the time of filing, was accused of first degree child rape, first degree child molestation, and communicating with a minor for immoral purposes. The

---

[†] To protect the privacy interests of N.B., a minor, we use initials throughout this opinion. Gen. Court Order for Court of Appeals, *In re Changes to Case Title*, (Wash. Ct. App. May 25, 2017), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders =atc.genorders_orddisp&ordnumber=2017_002&div=III.

No. 35513-6-III
*State v. N.B.*

victim, S.J.[††], was age 8 at the time of the offense and 9 at trial. The parents of the two children had developed a romantic relationship and moved in together, along with their children. Each adult had two children—one boy and one girl. The two girls roomed together, as did the two boys.

About six months after the families moved in together, S.J. reported an incident of touching to her brother, who convinced her to report it to their father. S.J. did so. The matter was then referred to the police and S.J. was interviewed by an officer and then a child forensic interviewer. The interviewer, Lisette Allan, described S.J. as a very bright girl who was more articulate than most children her age. The recording of the interview was admitted at trial.

S.J. described the incident. She was watching television when N.B. came into the room, removed his pants and underwear, and exposed himself to her. He put a condom on and began rubbing himself up and down. He told S.J. how a man and woman have sex. He left the room briefly before returning. He started touching her private area through her pants, pushing his finger on her. She told him to stop, and he eventually did so after a "painful five minutes."

---

[††] To protect the privacy interests of S.J., a minor, we use initials throughout this opinion. Gen. Court Order for Court of Appeals, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), http://www.courts .wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2017_002&div=III.

S.J. and those to whom she disclosed the incident constituted the six witnesses called by the State. N.B. testified in his own behalf, as did his mother. He denied the accusation. The defense presented, through cross-examination of some prosecution witnesses and through direct examination, several reasons why S.J. had motives to lie. The case was then argued to the bench on the competing theories of the child's credibility.

The trial judge acquitted N.B. on the rape and communication counts, but determined that he had committed child molestation. With respect to the credibility argument, the court noted that there were discrepancies in the child's reports, but stated that it "is not unusual in these types of cases, quite frankly." Report of Proceedings (RP) at 258. The court further noted:

> In fact, whether it be in case law or actually having a case heard in front of me, I've never seen a case where the child gave consistent account to various interviewers. And, again, I think it's a reasonable inference to be drawn that reasons for that can include the recency of the interview to the incident, the child's comfort level with an interviewer. It can include embellishments like I certainly believe happened during the defense interview that Mr. Cahn conducted in September of 2016 with [S.J.], which also could be indicative of a made up story or not. Again, I think that's why it is so important to look for things that would be hard for a child to make up or it could be based on other exposure. In those types of—again, in this case, those types of details I have outlined as the compelling nature for me.

RP at 259-60.

Prior to sentencing, the defense moved for a new trial, arguing both that the evidence was insufficient and that the court erroneously took judicial notice that

3

discrepancies were common in these cases. The court denied the motion and specified

particular sensory details in the testimony that it had found convincing and affirmed that

the decision was based solely on evidence presented at trial.

The court committed N.B. to the Juvenile Rehabilitation Administration for a

period of 15-36 weeks. He timely appealed to this court. A panel considered the case

without argument.

## ANALYSIS

This appeal presents three issues, which we combine into two.[1] We first consider

N.B.'s challenges to the judge's comments, noted above, which he contends were

improper judicial notice that prevented him from confronting the witness against him.

We then turn to his sufficiency of the evidence argument.

*Judge's Comments*

N.B. argues that the court's comments about child disclosure discrepancies being

common constituted taking judicial notice of outside evidence. They did not.

Washington judges are permitted to take judicial notice of "adjudicative facts."

ER 201(a). Such a fact "must be one not subject to reasonable dispute in that it is either

(1) generally known within the territorial jurisdiction of the trial court or (2) capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably

---

[1] A fourth claim of cumulative error is not addressed due to the lack of multiple errors.

be questioned." ER 201(b). The court can take judicial notice on its own and at any stage of proceedings. ER 201(c), (f). A trial court's ruling on a question of taking judicial notice presents a question of law reviewed de novo. *State v. Kunze*, 97 Wn. App. 832, 988 P.2d 977 (1999).

Contrary to N.B.'s argument, ER 201 is not implicated in this case. The court did not take judicial notice of an "adjudicative fact." Instead, the veteran trial judge was simply explaining that in her experience, as well as in the case law, disclosure discrepancies by young children were not uncommon. The court did not use this alleged "fact" as evidence to profile either the victim or the defendant and infer which one was telling the truth, nor did the court use this "fact" as a basis for finding that an element of the crime was proved. This comment was not evidence, nor was it used in an evidentiary manner.

Rather, the trial judge simply explained her reasoning for not being swayed by the defense argument that the child's story was inconsistent. This was a trial judge making a ruling based on the evidence and argument before her. Addressing a similar argument in a case where the trial judge rejected a party's argument by making reference to his own personal experiences, Division One of this court once noted that when "the judge is a trier of fact, illustrative comments phrased in the first person are not improper unless they evidence bias, prejudice, or other impropriety." *Fernando v. Nieswandt*, 87 Wn. App. 103, 109, 940 P.2d 1380 (1997).

5

This is just a manifestation of the fact that judicial decisions are informed by the judge's personal experiences. Judges are not blank slates operating outside of their life experiences.

> Our constitutional democracy is dependent upon an independent and informed judiciary. Our judiciary benefits from and relies upon judges who have studied and become learned in the law and whose personal experiences have taught them a practical understanding of the world we live in and how people live, work, and interact with the world around them.
>       We do not believe the legislature intended that judges leave their knowledge and understanding of the world behind and enter the courtroom with blank minds. Judges are not expected to leave their common sense behind. Nor do we believe the legislature expected judges to hold hearings on whether fire is hot or water is wet. We prize judges for their knowledge, most of which is obtained outside of the courtroom. Within the statutory and constitutional guidelines, judges may exercise their discretion to give a fair and just sentence.

*State v. Grayson*, 154 Wn.2d 333, 339, 111 P.3d 1183 (2005); *accord In re Estate of Hayes*, 185 Wn. App. 567, 599-600, 342 P.3d 1161 (2015).

Accordingly, we reject N.B.'s attempt to recast the trial court's explanation of its decision as admission of improper evidence. His judicial notice argument is without merit, as is the derivative argument that his confrontation rights also were violated by admission of improper "evidence."

*Sufficiency of the Evidence*

N.B. also argues that the evidence was insufficient because S.J. was not credible. This court does not judge credibility. The facts found by the trial court amply supported its judgment.

6

We review this argument under well settled principles of law. "Following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014) (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id*. at 106. In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Finally, this court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

This approach is the specific application of the evidentiary sufficiency standard dictated by the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Jackson* stated the test for evidentiary sufficiency under the federal constitution to be "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. Washington promptly adopted this standard in *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality opinion); *id*. at 235 (Utter, C.J., concurring); *accord State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

No. 35513-6-III
*State v. N.B.*

Under *Jackson*, the test is *could* the trier of fact find the element(s) proved. Whether the trial judge *should* have done so is not our concern, since the trial judge is the person who decides which witnesses are credible and which are not. For that reason, the argument N.B. raises goes to the weight to be given the testimony by the trier of fact. He may believe that S.J. should not have been believed over him, but the trial judge decided otherwise. She was convinced by the testimony of S.J., finding that more believable than the denial by N.B.

The testimony supported the bench verdict. S.J. was under the age of 12 at the time of the incident, N.B. was more than three years older than S.J., the two were not married, he made prolonged sexual contact with the intimate area of S.J., and did so for his own sexual gratification. All elements of the crime were satisfied. RCW 9A.44.083; RCW 9A.44.010(2).

The evidence supported the bench verdict. It was sufficient.

Affirmed.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Siddoway, J.                                              Lawrence-Berrey, C.J.

8