IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 84950-6-I |
| Appellant, | (consolidated w/ No. 85332-5-I) |
| v. | ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |
| JOEL DUANE ZWALD, | |
| Respondent. | |

Petitioner Department of Corrections (DOC) in consolidated case No. 85332-5-I filed a motion to reconsider the opinion filed on August 5, 2024, in the above case. The panel has determined that the motion for reconsideration should be denied but that the opinion filed on August 5, 2024, should be withdrawn and a substitute opinion filed that includes the claims raised in DOC's postsentence petition under case No. 85332-5-I. Now, therefore, it is hereby

ORDERED that DOC's motion for reconsideration is denied. It is hereby further

ORDERED that the opinion filed on August 5, 2024 shall be withdrawn and a substitute opinion shall be filed.

_Brennan, J_

_Coburn, J._

_Smith, C.J._

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 84950-6-I |
| Appellant, | (consolidated with No. 85332-5-I) |
| v. | |
| JOEL DUANE ZWALD, | PUBLISHED OPINION |
| Respondent. | |

BOWMAN, J. — Joel Duane Zwald appeals his jury convictions for third degree child molestation, second degree child molestation, and second degree child rape. He argues that the trial court commented on the evidence by instructing the jury that to convict Zwald, it need not corroborate the victim's testimony, and that the prosecutor committed misconduct during closing argument. He also asks us to remand for the trial court to strike the nonmandatory legal financial obligations (LFOs) imposed at sentencing based on his indigency. The Department of Corrections filed a postsentence petition, alleging the trial court erred in sentencing Zwald on count 3, second degree child rape. We affirm Zwald's convictions but remand for the court to determine whether he is indigent and reconsider the LFOs and to resentence Zwald on count 3.

FACTS

Zwald and M.C. started dating in 2007. In 2014, M.C., her son J.C., and her youngest daughter T.R.[1] moved in with Zwald.[2]

When T.R. was about 11 or 12 years old, Zwald began sexually assaulting her. In 2019, T.R. disclosed the abuse to her school counselor, Tracee Mullen.[3] Mullen reported the abuse to Child Protective Services (CPS) and the high school. The school contacted the police. On November 19, 2019, the State charged Zwald with one count of third degree child molestation, one count of second degree child molestation, and one count of second degree child rape of T.R.

A jury trial began in October 2022. T.R. testified in detail about her nonexistent relationship with her biological father and her strained relationship with her mother during her childhood. T.R. described M.C. as "a very closed-off person" and said that she and M.C. "would fight a lot." T.R. admitted that she "act[ed] out quite a lot," including running away from home. T.R. also said that after they moved in with Zwald, she "just kind of stopped getting along with everyone in my family," including Zwald, because "[h]e was molesting me." T.R. testified that after she disclosed the abuse, she moved in with her grandma and had not spoken to her mother in the three years since.

---

[1] Formerly known as T.M.

[2] M.C.'s oldest daughter, K.C., also moved in with Zwald, but left the home when she graduated high school.

[3] Formerly known as Tracee Smith.

T.R. then testified about the assaults, which "happened almost on a daily basis, . . . either in [her] room or [Zwald's]." T.R. said that she did not disclose the abuse sooner because she feared no one would believe her. But she did tell her then-boyfriend D.H., and he eventually encouraged her to disclose the abuse to her school counselor, Mullen. On cross-examination, defense counsel tried to impeach T.R.'s credibility by questioning her "chronic running away," stealing money from M.C. and Zwald, and "sneaking out to spend time with [D.H.]."

The State called Mullen to testify about T.R.'s disclosure and explain that as a mandatory reporter, she had to report the abuse to CPS and the high school. The State also called several law enforcement officers. Former Everson Police Department Officer Jordan Bryant testified that he responded to the high school's initial call to police. Officer Bryant interviewed T.R. and then transferred the case to the Whatcom County Sheriff's Office. Whatcom County Sheriff's Office Detective Erik Francis testified that he interviewed T.R. several days later, which he "audio video recorded." Detective Francis explained that he tried to contact T.R.'s brother, J.C., but he did not respond, and that he did not try to interview T.R.'s former boyfriend, D.H.

Zwald challenged both officers' investigations on cross-examination. Defense counsel criticized Officer Bryant for not interviewing witnesses other than T.R., including D.H., J.C., and one of T.R.'s friends. And he criticized Detective Francis' investigation for the same reason, eliciting testimony that along with D.H. and J.C., Detective Francis did not interview another high school

counselor or high school teachers.  Zwald testified on his own behalf and denied ever touching T.R. in an inappropriate manner.

The trial court instructed the jury before closing arguments.  Over Zwald's objection, it gave a no-corroboration instruction that stated, "In order to convict a person of child molestation in the second degree or rape of a child in the second degree, it is not necessary that the testimony of the alleged victim be corroborated."[4]

In closing, the prosecutor focused on how Mullen and law enforcement helped T.R. "find her voice" and how the State is "going to tell her story" to the jury.  In his closing argument, defense counsel told the jury that T.R. had a "truth problem" and that she was motivated to lie because she wanted to leave home to be with D.H.  And he claimed that the police investigation was inadequate because the officers failed to interview several potential witnesses.  In rebuttal, the prosecutor argued that the potential witnesses did not have "material" information and noted that he would not "be happy with law enforcement out there talking to people that they don't need to be talking to."

---

[4] The court did not include the third degree child molestation charge in the instruction, and the parties did not address the issue at trial.  During deliberations, the jury asked whether the no-corroboration instruction also applied to the third degree child molestation charge.  The trial court declined to answer the question directly and told the jury to "consider the instructions as a whole."

The jury convicted Zwald as charged. The court sentenced Zwald to a 170-month sentence[5] with 36 months of community custody and imposed several LFOs, including the $500 victim penalty assessment (VPA), the $100 DNA[6] collection fee, and $450 in court costs.

Zwald appeals.

ANALYSIS

Zwald argues that the trial court erred by giving a no-corroboration jury instruction and that the prosecutor committed misconduct during closing argument. He also asks us to remand to the trial court to strike the nonmandatory LFOs due to his indigency. We address each argument in turn.

1. No-Corroboration Jury Instruction

Zwald argues that the trial court's no-corroboration instruction was an unconstitutional comment on the evidence, requiring reversal, and that it violated his due process rights.

A. Comment on the Evidence

Zwald argues that the trial court unconstitutionally commented on the evidence by instructing the jury that the State need not corroborate T.R.'s testimony. We disagree.

---

[5] The sentencing court imposed consecutive determinate sentences for all three counts but also imposed a mandatory minimum of 146 months on count 3, second degree rape of a child, as well as an indeterminate sentence of 146 months to life for count 3.

[6] Deoxyribonucleic acid.

Article IV, section 16 of our state constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This is so a judge does not influence a jury by conveying "the court's opinion of the evidence submitted." *State v. Elmore*, 139 Wn.2d 250, 275, 985 P.2d 289 (1999). A jury instruction that does no more than accurately state the law pertaining to an issue does not amount to an impermissible comment on the evidence. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001). We review whether a jury instruction amounts to a judicial comment on the evidence de novo and in the context of the instructions as a whole. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

To determine whether a trial court's statement amounts to a comment on the evidence, we "look to the facts and circumstances of the case." *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). The fundamental question underlying our analysis is whether the mention of a fact in a jury instruction "conveys the idea that the fact has been accepted by the court as true." *Levy*, 156 Wn.2d at 726. Article IV, section 16's prohibition on such comments "forbids only those words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the credibility, weight or sufficiency of some evidence introduced at the trial." *Jacobsen*, 78 Wn.2d at 495.

In 1907, the legislature enacted Remington & Ballinger's Code section 2155, which required the State to corroborate a victim's testimony in sex cases. LAWS OF 1907, p. 396, § 1; *see State v. Gibson*, 64 Wash. 131, 132, 116 P. 872 (1911). But even before the legislature passed the 1907 act, our Supreme Court

6

repeatedly held that corroboration of the prosecuting witness in sex cases is unnecessary. *State v. Morden*, 87 Wash. 465, 468, 151 P. 832 (1915). Then, in 1913, the legislature repealed the corroboration statute under Remington & Ballinger's Code section 2443. LAWS OF 1913, ch. 100, § 1; *see Morden*, 87 Wash. at 467. Since then, corroboration of a prosecuting witness in sex cases has not been required by law. *State v. Thomas*, 52 Wn.2d 255, 256, 324 P.2d 821 (1958).

After several amendments, our legislature codified the no-corroboration common law rule in former RCW 9.79.150 (1975). LAWS OF 1975, 1st Ex. Sess., ch. 14, § 2. That statute says, "In order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated." Former RCW 9.79.150(1). The legislature uses that same language in the current statute, RCW 9A.44.020(1). *See* LAWS OF 1979, Ex. Sess., ch. 244, § 17 (recodifying former RCW 9.79.150 as RCW 9A.44.020).

For decades, trial courts have been asked to instruct juries in sex cases that the law does not require corroboration of an alleged victim's testimony. Our Supreme Court addressed whether a no-corroboration jury instruction amounts to a comment on the evidence 75 years ago in *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949). In that child sexual assault case, the trial court told the jury:

> "You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the [victim] alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that

7

> there be no direct corroboration of her testimony as to the commission of the act."

*Id.* at 572. The defendant argued that the instruction was an improper comment on the evidence, but our Supreme Court held that the instruction

> expressed no opinion as to the truth or falsity of the testimony of the [victim], or as to the weight which the court attached to her testimony, but submitted all questions involving the credibility and weight of the evidence to the jury for its decision.

*Id.* at 573-74.

Since our Supreme Court decided *Clayton*, we have consistently held that a no-corroboration jury instruction does not amount to a judicial comment on the evidence. *See State v. Chenoweth*, 188 Wn. App. 521, 537, 354 P.3d 13 (2015) (because sex crimes " 'are rarely[,] if ever[,] committed under circumstances permitting knowledge and observation by persons other than the accused and the complaining witness,' . . . it is permissible to instruct the jury that there is no corroboration requirement," and it does not amount to a comment on the evidence)[7] (quoting *State v. Galbreath*, 69 Wn.2d 664, 669-70, 419 P.2d 800 (1966)); *State v. Zimmerman*, 130 Wn. App. 170, 181-82, 121 P.3d 1216 (2005) (holding that under *Clayton*, a no-corroboration instruction "correctly stated the law and was not an improper comment on the evidence"), *remanded on other grounds*, 157 Wn.2d 1012, 138 P.3d 113 (2006).

Zwald tries to distinguish the instruction in his case from that given in *Clayton*. In Zwald's trial, the court instructed the jury in accordance with RCW

---

[7] First and second alterations in original.

9A.44.020(1) that "[i]n order to convict a person of Child Molestation in the Second Degree or Rape of a Child in the Second Degree, it is not necessary that the testimony of the alleged victim be corroborated."[8]  Zwald points out that in *Clayton*, the trial court also told the jury in the same instruction that " 'the question is distinctly one for the jury,' " who must return a verdict of guilty " 'if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant.' "  *Clayton*, 32 Wn.2d at 572.

According to Zwald, his no-corroboration instruction was different than *Clayton* and insufficient because it "did not emphasize that the jury's job was to determine guilt beyond a reasonable doubt."  But the trial court did instruct the jury that it must be satisfied beyond a reasonable doubt to convict Zwald.  In jury instruction 2, it told the jury that "[t]he State is the plaintiff and has the burden of proving each element of the crimes beyond a reasonable doubt."  And in instruction 1, the court told the jurors that they "are the sole judges of the credibility of each witness" and "of the value or weight to be given to the testimony of each witness."  It is immaterial that these admonishments do not appear in the same instruction because we review jury instructions as a whole

---

[8] In response to Zwald's objection to the instruction, the trial court said that it "[must] give that instruction" because it is the "current law."  Zwald does not challenge that statement, so we do not address it here.  But we note that the trial court has broad discretion to give or refuse a jury instruction that correctly states the law.  *See State v. Stacy*, 181 Wn. App. 553, 569, 326 P.3d 136 (2014).  Jury instructions are read as a whole and need not be given if the subject matter is adequately covered elsewhere in the instructions.  *State v. Ng*, 110 Wn.2d 32, 41, 750 P.2d 632 (1988).  Indeed, the Washington Supreme Court Committee on Jury Instructions recommends against giving the no-corroboration instruction.  11 WASHINGTON PRACTICE:  WASHINGTON PATTERN JURY INSTRUCTIONS:  CRIMINAL 45.02, at 1004 (5th ed. 2021).

and presume the jury follows the court's instructions.  *See State v. Wiebe*, 195 Wn. App. 252, 256, 377 P.3d 290 (2016).

Zwald also argues that "[e]ven if *Clayton* were on point, it is no longer good law" under *State v. Brush*, 183 Wn.2d 550, 353 P.3d 213 (2015).  In *Brush*, the jury considered whether abuse over a two-month period amounted to "an ongoing pattern of psychological abuse of the victim 'manifested by multiple incidents over a prolonged period of time.' "  *Id.* at 554-55 (quoting RCW 9.94A.535(3)(h)(i)).  Using a pattern jury instruction, the trial court instructed the jury that the term "prolonged period of time" means " 'more than a few weeks.' "  *Id.*  Our Supreme Court determined that the instruction amounted to an improper comment on the evidence because it told the jury that abuse over a time period longer than a few weeks meets the definition of a " 'prolonged period of time.' "  *Id.* at 559.  As a result, the instruction resolved a contested factual issue for the jury.  *Id.*

The instruction here is different.  Unlike the instruction in *Brush*, the trial court did not resolve a factual issue for the jury.  That is, the court did not tell the jury that the testimony offered by T.R. was sufficient to satisfy the elements of the charged crimes.  Instead, the instruction told the jury only that it need not corroborate T.R.'s testimony to convict Zwald of second degree child molestation and second degree rape of a child.  *Brush* does not overrule *Clayton*.

The trial court did not comment on the evidence by giving a no-corroboration jury instruction.

B. Due Process

Zwald argues that the no-corroboration jury instruction violates due process because it highlights a victim's testimony over other witnesses, including the defendant's, and suggests that the victim's testimony is subject to a different test for credibility. Because Zwald did not object to the instruction on those grounds, we decline to address the issue.

Zwald cites several out-of-state cases to support his due process argument. *See State v. Kraai*, 969 N.W.2d 487, 493 (Iowa 2022); *State v. Stukes*, 416 S.C. 493, 499, 787 S.E.2d 480 (2016); *Gutierrez v. State*, 40 Fla. Weekly S359, 177 So.3d 226, 232-33 (2015); *Ludy v. State*, 784 N.E.2d 459, 461 (Ind. 2003). And he says that "*Clayton* did not address any due process claim." But Zwald did not object to the no-corroboration instruction because it unduly highlights the victim's testimony. Instead, he argued that "we do take exception to [the no-corroboration instruction] to be inappropriate burden-shifting and unconstitutional on those grounds."

A party who fails to object to a jury instruction in the trial court waives any claim of error on appeal unless he can show manifest constitutional error. *State v. Edwards*, 171 Wn. App. 379, 387, 294 P.3d 708 (2012); RAP 2.5(a). And Zwald makes no effort to show manifest constitutional error. As a result, we do not address Zwald's due process argument.[9]

---

[9] Zwald also argues in passing that the no-corroboration jury instruction violates due process because it tells the jury that it may not acquit based on the absence of evidence. But Zwald did not object on that basis below, and he does not support the argument with legal analysis on appeal. So, we also decline to address that issue.

We reject Zwald's challenge to the no-corroboration jury instruction.

2. Prosecutorial Misconduct

Next, Zwald argues the prosecutor committed misconduct in closing argument by vouching for the State's witnesses and improperly appealing to the jury's emotions, arguing facts not in evidence, and denigrating defense counsel.

To prevail on a claim of prosecutorial misconduct, Zwald must establish that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). "Prejudice" means that there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 442-43. But when, as here, a defendant does not object to the alleged misconduct below, he waives any error on appeal unless he can show that the conduct was " 'so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.' " *Id.* at 443 (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

Generally, we reverse convictions based on flagrant and ill-intentioned misconduct in only " 'a narrow set of cases where we [are] concerned about the jury drawing improper inferences from the evidence.' " *State v. Loughbom*, 196 Wn.2d 64, 74, 470 P.3d 499 (2020) (quoting *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 170, 410 P.3d 1142 (2018)). Our analysis focuses on " 'whether the defendant received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been

cured with a timely objection.' " *Id.* at 75 (quoting *State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015)).

A. <u>Amplifying T.R.'s Voice</u>

Zwald argues that the prosecutor committed misconduct in his closing argument because he vouched for T.R.'s credibility and appealed to the passion and prejudice of the jury when he argued that he and other public servants amplified T.R.'s "voice." We disagree.

It is misconduct for a prosecutor to express a personal belief in the veracity of a witness. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010) (plurality opinion). Vouching occurs if a prosecutor either (1) places the prestige of the government behind the witness or (2) suggests that information not presented to the jury supports the witness' testimony. *State v. Robinson*, 189 Wn. App. 877, 892-93, 359 P.3d 874 (2015). But prosecutors may "argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *Thorgerson*, 172 Wn.2d at 448. We will not find prejudicial error unless it is " 'clear and unmistakable' " from the record that counsel expressed a personal opinion. *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (quoting *State v. Sargent*, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)).

Prosecutors also commit misconduct when they use arguments designed to incite the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (plurality opinion). These kinds of

arguments create a danger that the jury may convict for reasons other than the evidence produced at trial. *State v. Ramos*, 164 Wn. App. 327, 338-39, 263 P.3d 1268 (2011) (citing *United States v. Solivan*, 937 F.2d 1146, 1153 (6th Cir. 1991)).

Here, during closing argument, the prosecutor pursued a theme of amplifying T.R.'s voice:

> I stand here toward you one of a long line of public servants who have served and provide the voice of [T.R.]. Because in cases like these, cases where the alleged victim is a child of inappropriate sexual contact, there are no other witnesses, there is nobody else to tell [T.R.]'s story. There is no video cameras to tell [T.R.]'s story. There is no DNA to tell [T.R.]'s story. There is no forensic analysis to tell [T.R.]'s story. Why? Why? Because the alleged victims of child sex cases have no other witnesses. They are the only other person in the room when these acts occur and they are children. They are children being violated by the people they trust the most. How does a child find their voice in that set of circumstances? How does a child find the ability to come forward with their story?

The prosecutor described how T.R. first disclosed the abuse to her school counselor, Mullen:

> [T.R.] disclosed to her school counselor . . . in response to the school counselor saying have you suffered from sexual abuse. That is when everything changed for [T.R.]. That is when she had an opportunity to find her voice. To tell somebody what happened to her.

The prosecutor argued that by contacting CPS, Mullen "began the chain of public service [that was] going to serve to amplify [T.R.]'s voice."

The prosecutor then described how law enforcement investigated T.R.'s abuse. He said that the officers testified "how really their job is to give that child a voice, to let them tell their story." And he told the jury that law enforcement

14

created a "safe space for [T.R.] to tell her story," and that "[a]fter years of suffering abuse at the hands of [Zwald], . . . [law enforcement was] going to listen to her and let her tell her story."

Finally, the prosecutor told the jury, "I'm going to tell [T.R.]'s story to the individuals that finally opened up to her. I'm going to tell her story to the people who were willing to listen and to now come before you, 12 people she has never seen before." As the prosecutor described T.R.'s testimony, he commented that Zwald "took . . . away" T.R.'s choice to consent and questioned, how is "that girl going to find her voice? She doesn't at first. She keeps it in." The prosecutor argued that T.R. did not immediately disclose the abuse to avoid upsetting her mother. And he argued that T.R. showed "courage" by disclosing it to Mullen and then law enforcement and by testifying at trial.

First, Zwald contends the prosecutor's arguments amount to vouching for T.R.'s credibility. He likens this case to the prosecutor's comments in *Sargent*. In that case, we reversed based on the prosecutor's statement to the jury, " 'I believe [the witness]. I believe him when he tells us that he talked to the defendant.' " 40 Wn. App. at 353, 343.[10] We held that those statements were both improper and prejudicial because they bolstered the credibility of the only witness directly linking the defendant to the crime, and all the other evidence against the defendant was circumstantial. *Id.* at 345.

---

[10] Emphasis omitted.

This case is different. While we view the prosecutor's argument as self-aggrandizing and dramatic, he did not tell the jury that he believed T.R.'s testimony. Instead, the prosecutor argued that it was the job of public servants, including T.R.'s school counselor and law enforcement, to relay to the jury what T.R. told them. And it was his job as prosecutor to bring T.R.'s testimony to the jury. At the same time, the prosecutor affirmed to the jury that is was their "job" to "determine the credibility of the witnesses." As much as the prosecutor argued that the public servants "amplif[ied]" T.R.'s voice, he appears to be emphasizing their roles in the judicial process and how those roles brought the evidence before the jury.

Zwald fails to show that the prosecutor expressed his personal belief in T.R.'s allegations during closing argument. So, the prosecutor's argument did not amount to vouching.

Zwald also argues that the prosecutor's argument sought to enflame the passions and prejudices of the jury. Zwald likens his case to *State v. Bautista-Caldera*, 56 Wn. App. 186, 194, 783 P.2d 116 (1989). In *Bautista-Caldera*, the prosecutor stated, " '[D]o not tell that child that this type of touching is okay, that this is just something that she will have to learn to live with. Let her and children know that you're ready to believe them and [e]nforce the law on their behalf.' " *Id.* at 194-95.[11] We determined the prosecutor impermissibly asked the jury to send a message to society by convicting the defendant. *Id.* at 195.

---

[11] Emphasis omitted; second alteration in original.

Zwald argues his case is similar to *Bautista-Caldera* because the prosecutor took on the role of T.R.'s "personal advocate," and he tried to align the jury with the State as public servants with a responsibility to protect T.R. But the prosecutor did not tell the jury he was a personal advocate for T.R. or that they should convict for any reason other than the evidence presented at trial. And, in any event, Zwald did not object to the argument and fails to show that the court could not cure any prejudice with a timely objection.

The prosecutor did not vouch for T.R.'s credibility or impermissibly appeal to the passions and prejudices of the jury during closing argument.

B. Law Enforcement Investigation

Zwald argues the prosecutor improperly relied on facts not in evidence regarding law enforcement's investigation and vouched for their credibility. We agree, but Zwald does not show prejudice.

A prosecutor may not suggest that evidence not presented at trial provides additional grounds for finding a defendant guilty. *Russell*, 125 Wn.2d at 87. But a prosecutor may argue that the evidence does not support the defendant's theory. *Id.* And prosecutors may make a fair response to the arguments of defense counsel. *Id.* Further, a prosecutor has wide latitude in closing argument and may draw reasonable inferences from the evidence. *Thorgerson*, 172 Wn.2d at 448. We consider a prosecutor's comments in the context of the entire case. *Id.* at 443.

In closing, Zwald's attorney argued that law enforcement should have interviewed additional witnesses:

> [Mullen], school counselor, she filed a report. That's what she was supposed to do. She was not tasked, and I am not alleging she failed a task, she is not tasked with doing an investigation. She met her obligation. Box was checked. [T.R.] said, yes, I was sexually assaulted or whatever the phrase was, she called people, law enforcement responded, CPS responded. [Mullen] did her job. Interesting, law enforcement didn't interview her. [Officer] Bryant did not interview [Mullen]. Detective Francis did not interview [Mullen]. . . . Nobody talked to [another high school counselor]. . . .
>
> . . . .
>
> As I said, how hard would it be with this level of allegation, this much penalty in play, how hard would it be to go to the school and talk to the teachers? Hey, what do you think about [T.R.]? Did she show up? Is she a good student? Does she tell the truth? Nobody talked to [D.H.]. Nobody talked to [D.H.]. That's remarkable. It should be offensive to you that you are stuck with this emotional testimony and nothing to support it and you are left with the prosecutor saying [M.C.] is a bad mom, so you should convict.

In the prosecutor's rebuttal, he argued:

> You know, in every case you can say should have talked to this person. Should have talked to this person. Should have taken that photo. Should have taken at that photo. What matters, we went through this on the stand, is if there is evidentiary value from what law enforcement sees and you heard from Detective Francis, yeah, I reached out to this person, I reached out to that person, they didn't get back to me and none of these people that defense counsel are suggesting should have been talked to were present. Right. They don't have information as to what really transpired in those rooms over those years. They don't have that information. They are not going to give us that information. What are we going to get from [D.H.]? (Unintelligible) an ex-boyfriend. It is not material value. We rely on our law enforcement investigators to make that determination, to use their time and resources efficiently. This is not the only case they're investigating. They are judicious with what they are doing, and I can tell you, I am not going to be happy with law enforcement out there talking to people that they don't need to be talking to, that's not going to be valuable to the presentation of our case.

18

Zwald argues that the prosecutor argued facts not in evidence by asserting that law enforcement did not interview certain witnesses because their testimony was "not [of] material value." He is correct. Neither party presented evidence at trial about the content of the other witnesses' testimony. So, his argument improperly referenced facts not in evidence. *See State v. Teas*, 10 Wn. App. 2d 111, 128, 447 P.3d 606 (2019) (a prosecutor commits misconduct by asking the jury to decide a case based on evidence outside the record). And the State concedes that "[t]he prosecutor's isolated reference that *he* would not be happy if investigators were talking to people that are not materially valuable to the case" amounts to improper vouching. We accept the State's concession; the comment was improper.

Still, Zwald did not object to the prosecutor's argument, and he fails to show that the court could not have alleviated any prejudice through a curative instruction. So, Zwald fails to show that the prosecutor's comments were so flagrant and ill intentioned that they caused an enduring and resulting prejudice that the trial court could not have cured by an admonition to the jury. Any error is waived.

C. Denigration of Counsel

Finally, Zwald argues that the prosecutor improperly denigrated defense counsel during his rebuttal argument. We agree in part, but again, Zwald does not show prejudice.

19

In general, it is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity. *Thorgerson*, 172 Wn.2d at 451. Here, the prosecutor argued:

> We talked about truth issues, you know, tragedy alleged victim is a classic defense tactic and I'm sorry it happened in this case, but, you know, essentially, what he is trying to do is call her a liar. Right. That's his game. Right. I'm going [to] tell you guys she is lying. That's what he is trying to do. They bring up her past as a child. Okay. A child struggling with a broken home, struggling with not having a biological father there, struggling with the issues that have been presented with her and her mom. The child has truth issues. The child has family issues. She is acting out in ways that children do.

Zwald argues that the comments mischaracterized and impugned his attorney. The State characterizes the comments as "summarizing Zwald's argument that the victim was a liar who should not be believed." But because the prosecutor appears to make a personal reference to defense counsel, calling the trial strategy "his game," we tend to agree with Zwald. Still, again, because Zwald did not object to the argument and a curative instruction could have alleviated any potential prejudice, he waives any error.

We reject Zwald's argument that we must reverse his convictions due to prosecutorial misconduct.

3. LFOs

Finally, Zwald argues we should remand to the trial court to strike his LFOs based on indigency. The State agrees remand is necessary to allow the court to consider whether Zwald has the ability to pay the nonmandatory LFOs. We agree with the State.

When the court sentenced Zwald in January 2023, it imposed the $500 VPA, $100 DNA collection fee, $200 criminal filing fee, and $250 jury demand fee. At that time, the $500 VPA and $100 DNA collection fee were mandatory under former RCW 7.68.035(1)(a) (2018) and former RCW 43.43.7541 (2018). But while Zwald's appeal was pending, the legislature amended both statutes, eliminating those LFOs for indigent defendants. LAWS OF 2023, ch. 449, §§ 1, 4. And the amended statutes apply prospectively to cases pending appeal at the time of the amendments. *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) (citing *State v. Ramirez,* 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018)).

Further, under RCW 10.01.160(3), the court may not order an indigent defendant to pay court costs. At the time of Zwald's sentencing, the court did not inquire about his ability to pay the LFOs. But on appeal, the trial court found Zwald indigent and allowed him to proceed at public expense. We remand for the trial court to determine whether Zwald is indigent and reconsider imposition of the LFOs. *See Ellis*, 27 Wn. App. 2d at 16-18.

In sum, the trial court did not err by giving a no-corroboration jury instruction in accordance with RCW 9A.44.020(1). And we reject Zwald's argument that we must reverse his case due to prosecutorial misconduct. We

21

affirm Zwald's convictions, but remand for the trial court to consider whether he has the ability to pay his nonmandatory LFOs.[12]

WE CONCUR:

---

[12] The Department of Corrections filed a postsentence petition under consolidated case No. 85332-5-I, alleging that the trial court erred by imposing a determinate sentence, a mandatory minimum sentence, and a 36-month fixed term of community custody on count 3, second degree rape of a child. The parties concede the error. Because RCW 9.94A.540 does not authorize a mandatory minimum sentence for second degree child rape, RCW 9.94A.507(1)(a)(i) mandates an indeterminate sentence for the charge, and RCW 9.94A.507(5) requires a community custody term "for any period of time the person is released from total confinement before the expiration of the maximum sentence," we also remand for the court to resentence on that count.