**FILED**
**JUNE 5, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39939-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAURA MARIE HALL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — A jury found Laura Hall guilty of second degree robbery and imposed $423.91 in restitution. Hall appeals, raising five issues. First, Hall contends that the trial court erred when it denied the defense's motion to strike the entire jury venire after two prospective jurors made remarks about other persons with the same last name. Second, she claims the prosecutor impugned the integrity of defense counsel and committed misconduct during closing by arguing that some testimony was "just fluff" and was offered "to confuse" the jury. Third, she argues she was denied effective assistance of counsel when her attorney failed to object to the prosecutor's comments during closing. Fourth, assuming this court agrees with her prior arguments, Hall alleges the cumulative errors denied her a fair trial. Finally, because of recent legislation, she

requests this court remand for the trial court to reconsider the imposition of interest on restitution.

Finding no error, we affirm Hall's conviction but remand for the limited purpose of considering legal financial obligations including interest on restitution.

BACKGROUND

The State charged Laura Hall with second degree robbery for stealing her neighbor's camera. The case proceeded to trial.

During jury selection, the State asked the jurors whether they thought their job was to decide if Hall was a good or bad person, based on juror 2's response. Prospective juror 4 responded, and the following exchange occurred:

> PROSPECTIVE JUROR NO. 4: So here's I tried to put this in the back of my head and kind of get rid of it, but I'm kind of struggling with Eddie and Freddy and Teddy Hall in my past, and I know she might not be related, but it's just kind of hard to get that out of my head.
>
> [STATE]: Okay.
>
> PROSPECTIVE JUROR NO. 4: So I just wanted to be honest about that.
>
> [STATE]: Okay.
>
> PROSPECTIVE JUROR NO. 4: I've grown up with that scenario my whole life.
>
> [STATE]: Okay. Anyone else disagree with that statement? Okay. Does everyone agree Ms. Hall deserves a fair trial here today? Does everyone agree that the State deserves a fair trial, as well? Does anyone think that gee, I would not make a good juror for this case? Juror Number 4, because of what you just stated?
>
> PROSPECTIVE JUROR NO. 4: Mh-hmm.

[STATE]: Anyone else? Juror Number 32.

PROSPECTIVE JUROR No. 32: I hadn't made the connection until it was brought up, and now I'm thinking that, too, so.

[STATE]: Okay. Thank you. Anyone else? What about if I slightly change that statement. Gee, I would not be a good juror if I was the defendant in this case? I would not want myself to be a juror on this case if I was the defendant.

Rep. of Proc. (RP) at 94-95.

Defense counsel later followed up with prospective juror 4:

[DEFENSE]: Then, Number 4, I'm just coming back to you because I want to confirm that you don't feel like you can be fair and impartial because you know some people with the same last name. Are you going to be thinking about them for this whole trial?

PROSPECTIVE JUROR No. 4: I have ever since, and I tried during break, but I just can't.

[DEFENSE]: The last name is triggering for you?

PROSPECTIVE JUROR No. 4: Yeah.

[DEFENSE]: Is there anybody else that last name triggers?

PROSPECTIVE JUROR No. 4: No. Oh, I thought you meant any other Halls. There's lots of Halls.

[DEFENSE]: I didn't catch your number, but I did notice you said something. 32.

PROSPECTIVE JUROR No. 32: 32.

[DEFENSE]: 32, are you going to be sitting here and thinking about the last name Hall?

PROSPECTIVE JUROR No. 32: I think I probably–it would be hard for me to disassociate it now that I heard. If you said they weren't related, I'm fine. If you can't say that, I'm going to probably continue to think that.

[DEFENSE]: And I don't get into–

PROSPECTIVE JUROR No. 4: They lived in my neighborhood, so.

[DEFENSE]:  Do you think you're going to be having that impact your judgment?

PROSPECTIVE JUROR No. 32:  Unless you said that she wasn't part of that group of Spokane people, then probably I would be thinking of it the whole time.

[DEFENSE]:  Okay.  Thank you for being honest on that, and it happens.  We all have had bad experiences with one family or another.  Okay.  So I'll move on from that unless there was anybody else who had issues with that last name.

RP at 99-100.  After the questioning concluded, the court followed up with prospective

jurors 4 and 32:

THE COURT:  Okay.  I had a question for Number 4 and I believe Number 32 because obviously you mentioned something about a name familiarity with another family.

Just based on that name because that name Smith, we get a lot of Smith.

PROSPECTIVE JUROR No. 4:  She kind of looks like a Hall.  I'm sorry, but she does, and I mean, they grew up in my neighborhood.  So we put up with it all the time in our neighborhood.

THE COURT:  What I'm saying, though, is as far as you don't have any knowledge of that?

PROSPECTIVE JUROR No. 4:  No.

THE COURT:  And just the fact that the name recognition–

PROSPECTIVE JUROR No. 4:  Right.

THE COURT:  –would you be able to set that aside because you don't know that as far as related.

PROSPECTIVE JUROR No. 4:  I don't think so because it was my whole childhood, and I just I sat here that whole first session, and I kept looking at her going.

THE COURT:  Just that name recognition?

PROSPECTIVE JUROR No. 4:  And I kept going she kind of looks like Eddie Hall when I was growing up, and I can't get past that I don't think.

4

THE COURT: Okay. How about Number 32?

PROSPECTIVE JUROR No. 32: When she mentioned it, I kind of made the correlation, but, again, I'm a big believe you're innocent until proven guilty, so prove away. So I think I could be unbiassed in that respect.

RP at 124-25.

After the jury venire was excused, defense counsel sought to strike prospective jurors 4 and 32, and then the entire venire:

[DEFENSE]: Yes. Ms. Hall is related to those Halls that were being discussed. I'm a little bit worried about the taint of the jury pool, which is why I didn't further ask any questions, but I am asking for Number 4 and Number 32 to be struck for cause because she is related to this family.

I'm also wanting to ask to strike the panel just because Juror Number 4 said she looks like a Hall.

THE COURT: She didn't talk about them being criminals or anything like that. All she said she knew the Hall family.

[DEFENSE]: I just have to make the request, Your Honor. I don't like to ask to strike the panel, but when it was such a negative connotation the way she was going on about it.

RP at 127. The court ultimately struck prospective juror 4 for cause, and prospective juror 32 did not end up sitting on the jury.

At the end of trial, both parties presented their closing statement to the jury. The prosecutor began by stating that the jury had

heard a lot of testimony, *and a lot of that testimony was just fluff. It was just there to just kind of confuse you.* We are here today because Ms. Hall is charged with robbery in the second degree, and you just heard in the jury instructions that there are several elements that the State needs to prove beyond a reasonable doubt to prove and to have Ms. Hall be found guilty of robbery in the second degree.

RP at 334 (emphasis added). Next, the defense presented its closing to the jury. In response to the State's argument, defense counsel stated:

> At the start of [the State's] closing argument, she said the evidence is–the testimony in this case is all fluff. The primary evidence in this case was testimony. So how can anybody get convicted based on all fluff?
>
> You have to have a moral certainty Ms. Hall is guilty of robbery to convict her. It's the only chance you get to vote not guilty. You can't look back in a month or a year and say man, I think I made a mistake because her life will already have been altered.
>
> You need to have today be the day that you're certain. In this case, the fluff or the evidence has not shown you that Ms. Hall is guilty of a robbery.

RP at 349.

During deliberations, the jury sent the court a question inquiring, "Is it customary for the State to get involved with a camera being stolen? Is it based on dollar amount? Potential force involved?" RP at 355. The parties and court agreed that it was most appropriate to direct the jury to refer to their instructions.

The jury found Hall guilty of second degree robbery. Hall was later sentenced and the court ordered her to pay restitution in the amount of $423.91 for the camera and waived the DNA collection fee after an objection from defense counsel. The court also ordered interest on restitution, to which defense counsel did not object.

Hall appeals.

6

No. 39939-7-III
*State v. Hall*

ANALYSIS

1.  MOTION TO STRIKE JURY VENIRE

Hall contends that comments made by prospective jurors 4 and 32 during voir dire tainted the jury venire and denied her a fair trial.  We disagree.

As an initial matter, the parties appear unclear on the appropriate standard of review for this issue.  The State notes that at least one court found strong reasons to apply an abuse of discretion standard, citing *State v. Rawlins*.[1]  Conversely, Division Two reviewed this issue de novo in *State v. Strange*.[2]  Here, the State contends that abuse of discretion should be the standard of review because unlike in Hall's case, *Strange* did not move for a mistrial during voir dire or object to the juror's comments.  In reply, Hall does not clarify the standard of review, but rather, states that reversal is required under either standard of review.  We conclude that under either standard, Hall's argument fails and reversal is not warranted.[3]

---

[1] No. 80259-3-I, slip op. at *9 (Wash. Ct. App. March 28, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/802593.pdf.

[2] 188 Wn. App 679, 354 P.3d 917 (2015).

[3] *State v. Smith* instructs appellate courts to "afford great deference to the trial court's decision of whether to remove a challenged juror" and that a decision should not be reversed "absent a clear abuse of discretion."  3 Wn.3d 718, 721, 555 P.3d 850 (2024). This is because generally, the lower court is "best positioned to evaluate the ability of a potential juror to serve, as they can observe the juror's demeanor and tone, gauging the subtler tells of bias that may not be captured in the transcripts."  *Smith*, 3 Wn.3d at 720.

7

"The Sixth Amendment to the United States Constitution and Washington Constitution article I, section 22 guarantee the right to a fair trial 'by an impartial jury.'" *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 807, 425 P.3d 807 (2018) (quoting U.S. CONST. amend VI; WASH CONST. art. I, § 22)). Both parties rely on *Strange*, which provides clarification on this issue.

In *Strange*, the defendant argued that his right to a fair trial by an impartial jury was violated "when a prospective juror made comments regarding" their own prior experiences with child molestation, . . . [claiming it] tainted the entire jury venire." 188 Wn. App. at 684-85. The *Strange* court discussed another related case, *Mach v. Stewart*,[4] where the Ninth Circuit held that a prospective juror tainted the entire jury venire when she commented openly that as a social worker, every report of sexual assault she had worked on had been confirmed. 188 Wn. App. at 685. The juror in *Mach* repeated that opinion three more times and also discussed her knowledge in courses such as psychology as well as her extensive background working with psychologists and psychiatrists. *Mach*, 137 F.3d at 632. The *Strange* court distinguished its facts from *Mach*, noting that "(1) no prospective juror professed any expertise" about the *Strange* case, and (2) no prospective juror "stated multiple times that, in their experience, children who are sexually abused never lie about their abuse." 188 Wn. App. at 686. Ultimately,

---

[4] 137 F.3d 630, 632 (9th Cir. 1997).

the court held that Strange's right to a fair trial by an impartial jury was not violated by the prospective juror's comments. 188 Wn. App. at 687.

With these cases in mind, we turn to the comments from prospective jurors 4 and 32 in Hall's case. Here, Hall frames the issue as prospective juror 4 indicating that she had issues in the past with Hall's "siblings." We disagree with this characterization. Prospective juror 4 said she had poor experiences growing up with neighbors with the same last name, and thought they looked similar but she did not know if there was a relation, acknowledging that Hall was a popular last name. This juror's suspicions about the relationship was confirmed outside the presence of the jury.

Likewise, prospective juror 32 explained that if the attorney could confirm they were not related, she would be fine. If the attorney could not, she was "probably [going to] continue to think that." RP at 99. Despite this, potential juror 32 then stated although she initially made the correlation, she was a "big believer you're innocent until proven guilty." RP at 125.

These comments do not rise to the level of those outlined in *Mach*, but more closely correlate with the comments made in *Strange*. Neither prospective juror spoke as an expert, made repeated assertions, or relayed knowledge of any criminal conduct by the Hall brothers, their family, or the defendant. Instead, each prospective juror made comments suggesting a personal experience that left prospective juror 4 with a bias against persons with the last name "Hall."

9

In support of her argument, Hall asks this court to take judicial notice of Eddie Ray Hall's infamy in Spokane, citing several news articles written about him. Generally, "Washington judges are permitted to take judicial notice of 'adjudicative facts.'" *State v. N.B.*, 7 Wn. App. 2d 831, 835, 436 P.3d 358 (2019) (quoting ER 201(a)). However, such a fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b). Here, it would not be appropriate for this court to take judicial notice of Eddie Ray Hall's "infamy" in Spokane because that fact is subject to reasonable dispute. Likewise, the accuracy of the information provided in the newspaper can arguably be questioned. Additionally, the question is not what the court knows, but what the venire knows. Here, even if jurors were aware of Eddie Hall's reputation, there was no indication that any prospective juror knew there was a relation with the defendant in this case.

Since we find no error or abuse of discretion, we decline to address Hall's argument that any error is structural.

2.  PROSECUTORIAL MISCONDUCT

Hall contends that the prosecutor committed misconduct during closing when characterizing testimony elicited by defense counsel as "just fluff" and "the kind to confuse you." The State argues that the prosecutor did not impugn defense counsel or her

10

role and that any claim of misconduct was waived by failure to object. We conclude that Hall has failed to demonstrate misconduct.

This court reviews claims of prosecutorial misconduct for an abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014); *State v. Brett*, 126 Wn.2d 136, 174, 892 P.2d 29 (1995). In a claim for prosecutorial misconduct, "the defendant bears the burden of [demonstrating] that the comments were improper and prejudicial." *Lindsay*, 180 Wn.2d at 430. Additionally, if a defendant does not "object or request a curative instruction at trial, the issue of misconduct is waived unless the conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *Id.* Generally, we will reverse a conviction for "ill-intentioned misconduct in only 'a narrow set of cases where we [are] concerned about the jury drawing improper inferences from the evidence.'" *State v. Zwald*, 32 Wn. App. 2d 62, 75, 555 P.3d 467 (2024) (internal quotation marks omitted) (alteration in original) (quoting *State v. Loughbom*, 196 Wn.2d 64, 74, 470 P.3d 499 (2020)). Here, Hall did not object to the prosecutor's comments. As such, she must demonstrate flagrant and ill-intentioned conduct to succeed on her claim.

When providing an argument, a prosecutor may "argue that the evidence does not support the defense theory." *Lindsay*, 180 Wn.2d at 431. However, a prosecutor must not do so in a way that impugns "the role or integrity of defense counsel." *See, e.g.*, *Lindsay*, 180 Wn.2d at 431-32 (stating that "This is a crock. What you've been pitched

11

for the last four hours is a crock" impermissibly impugned defense counsel); *State v. Thorgerson*, 172 Wn.2d 438, 451-52, 258 P.3d 43 (2011) (noting that it was improper for prosecution to refer to defense counsel's presentation as "bogus" "and involving sleight of hand"); *Warren*, 165 Wn.2d at 29 (explaining that it was improper for prosecutor to describe "defense counsel's argument as a 'classic example of taking these facts and completely twisting them to their own benefit, and hoping that you are not smart enough to figure out what in fact they are doing'").

Here, the prosecutor commented in closing that "[y]ou have heard a lot of testimony, and a lot of that testimony was just fluff. It was just there to just kind of confuse you." RP at 334. In rebuttal, the prosecutor pointed to the testimony of one witness who testified that the defendant forcefully took his camera out of his hands and argued "[t]hat, ladies and gentlemen, is a robbery in the second degree. Everything else is just to confuse you." RP at 352. Hall did not object to either of these comments. For several reasons, these comments do not rise to the level of flagrant and ill-intentioned misconduct.

First, the comments were generalized and not directed solely at testimony presented by the defense. Second, unlike the cases referred to above, which all imply terms of deception and dishonesty, the term "fluff" does not do so. Importantly, Hall agrees that merely describing evidence as "fluff" is not improper.

12

Instead, Hall contends using this term along with suggesting it was meant to "confuse the jurors" was misconduct. However, as the State argues, referring to evidence as confusing suggests no more than an attempt to direct the jury that it was irrelevant to the true question presented to the jury, which was whether the State presented sufficient evidence beyond a reasonable doubt that Hall took the camera by force. When reviewing both comments in the context of the entire argument, it is clear that the prosecutor was pointing out that some evidence was irrelevant to this issue. *See State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009) ("We review a prosecuting attorney's allegedly improper remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.").

Since we do not find these comments to be flagrant or ill-intentioned, we do not need to address prejudice.

3.   INEFFECTIVE ASSISTANCE OF COUNSEL AND CUMULATIVE ERROR

Alternatively, Hall alleges that her attorney was constitutionally ineffective for failing to object to the prosecutor's comments during closing and cumulative error denied her a fair trial. Because we conclude the prosecutor's conduct was not improper, we likewise determine that the failure to object does not amount to deficient performance by Hall's counsel and likewise disagree with Hall's contention of cumulative error.

13

Both the United States and Washington State Constitution guarantee the right to effective assistance of counsel. U.S. CONST. amend VI; WASH CONST. art. I, § 22. This court reviews ineffective assistance of counsel claims de novo. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Washington has adopted the two-prong test outlined in *Strickland v. Washington*[5] to evaluate "whether a defendant had constitutionally sufficient representation." Under the *Strickland* test, the defendant must make a showing of both (1) deficient performance, and (2) resulting prejudice to succeed on a claim of ineffective assistance of counsel. *Estes*, 188 Wn.2d at 457-58.

Performance will be considered deficient if it falls "'below an objective standard of reasonableness based on consideration of all the circumstances.'" *Estes*, 188 Wn.2d at 458 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). However, "Washington courts indulge a strong presumption that counsel's representation was reasonable." *Id*. Furthermore, representation will not be considered deficient if it can be characterized as a legitimate trial strategy or tactic. *Id*.

Deciding whether or not to object is often considered a classic example of a trial strategy or tactic. *State v. Stotts*, 26 Wn. App. 2d 154, 165, 527 P.3d 842 (2023). For example, failing to object to evidence that otherwise may be inadmissible can be considered a legitimate tactic "to avoid highlighting certain evidence." *Id*. In this

---

[5] 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

context, Washington courts typically presume "'the failure to object was the product of legitimate trial strategy.'" *Id.* (quoting *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007)). For this reason, even failing to object a few times is typically not cause to find that an attorney's representation was deficient. *Stotts*, 26 Wn. App. 2d at 166. Where the defendant's ineffective assistance claim is based on the failure to object, "'the defendant must show that the objection would likely have succeeded.'" *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 438 P.3d 541 (2019)).

Here, Hall's claim rests on defense counsel's failure to object in two different instances: (1) when the prosecutor accused defense counsel of eliciting testimony that was "fluff" and (2) that it was "just to confuse" the jury. As an initial matter, failing to object a few times is typically not cause by itself to find deficient performance and Hall has failed to demonstrate this was not a legitimate trial strategy. And, as the State notes, the defense used this phraseology to its advantage by stating to the jury "how can anybody get convicted based on all fluff?" and asserting "the fluff or the evidence has not shown you that Ms. Hall is guilty of a robbery." RP at 349. For these reasons, Hall has failed to demonstrate deficient performance and ineffective assistance of counsel.

Hall contends that cumulative error of the alleged tainted jury pool, prosecutorial misconduct, and ineffective assistance of counsel denied her a fair trial. "'The cumulative error doctrine applies where a combination of trial errors denies the accused

of a fair trial, even where any one of the errors, taken individually, would be harmless.'"

*State v. Azevedo*, 31 Wn. App. 2d 70, 85, 547 P.3d 287 (2024) (quoting *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014)). Reversal is required where the totality of the circumstances show that the accumulation of errors substantially prejudiced the defendant, denying him or her a fair trial. *Id*.

Because we find no error, the cumulative error doctrine does not apply.

4.   INTEREST ON RESTITUTION

Hall contends, for the first time on appeal, that this case should be remanded for reconsideration of the 12 percent interest imposed on restitution based on recent legislation. The State argues that the law became effective a month before her sentencing, and thus, Hall could have raised the issue below. As such, the State contends we should not review the issue under RAP 2.5(a).

A defendant who fails to object to the imposition of "discretionary LFOs[6] at sentencing is not automatically entitled to review." *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015). This is because under RAP 2.5(a), this court may refuse to review a claim of error that was not raised in the trial court. Requiring error preservation through objections "serves the goal of judicial economy by enabling trial courts to correct

---

[6] Legal financial obligations.

mistakes and thereby obviate the needless expense of appellate review and further trials."
*State v. Lazcano*, 188 Wn. App. 338, 356, 354 P.3d 233 (2015). Therefore, an appellate court must decide for itself whether to accept review of a discretionary LFO issue not raised below. *Blazina*, 182 Wn.2d at 835.

Effective July 1, 2023, "[t]he court may elect not to impose interest on any restitution the court orders." RCW 10.82.090(2). Before deciding whether or not to impose interest on restitution, the court shall inquire into and consider: (a) the defendant's indigency, (b) available funds, (c) the defendant's homeless status, (d) mental illness, and (e) the victim's input, if any, as it relates to financial hardship. RCW 10.82.090(2). After the court considers these factors, it may decide whether to "waive the imposition of restitution interest." RCW 10.82.090(2).

Here, the record reflects that Hall is indigent. In addition, she was sentenced shortly after the new law became effective. For these reasons, we exercise our discretion under RAP 2.5(a) to consider this issue. We remand for the limited purpose of allowing the court to reconsider any legal financial obligations and apply the factors set forth in RCW 10.82.090(2) in determining whether to impose interest on restitution ordered.

We affirm Hall's conviction and sentence, but remand for the limited purpose of allowing the sentencing court to reconsider whether to impose interest on the restitution order.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Murphy, J.